## McCourt's Estate.

*Wills — Construction — Condition that legatee should be heard of within specified time.*

Testator bequeathed $5000 to A and stated that he had not heard from him for some years and he might be dead. He, therefore, provided that the sum should be held by his executor and invested for five years, during which time efforts should be made to find the legatee by advertisement, with gifts over if, at the end of five years, he was not heard of. The executor advertised and received sundry communications touching the legatee, but none of them gave his address. Four months after the five years had expired the legatee came to his office. The legatees in the gifts over contended there was a forfeiture and they were entitled to the fund: *Held*, that the gift over did not take effect and A was entitled to the fund.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1916, No. 121.

The auditing judge (Lamorelle, P. J.), in his readjudication, said:

"In the adjudication filed Feb. 10, 1916, a legacy of $5000, given in the first instance to one John McCourt, was awarded back to the executor to give him an opportunity to ascertain the whereabouts of the legatee.

"This is the clause of the will in question: 'I give and bequeath to John McCourt, son of my brother Patrick McCourt, the sum of Five Thousand Dollars ($5000). I have not heard from him for some years and he may be dead, and I therefore provide that the said sum shall be held by my Executor hereinafter named and invested and the income accumulated for the period of five years, during which time efforts shall be made to find him by advertising, and if at the end of five years he has not been heard of, I direct that then the said fund with its accumulations shall be held for the benefit of the children of Clement Regli, to be divided equally between them, share and share alike. I direct my Executor to pay the whole fund over to their said

McCourt's Estate.

father if living, and their said father shall pay over to each of his said children their equal share upon their respectively reaching the age of twenty-one years.'

"David McCourt, testator, died Dec. 22, 1914. His will is dated Oct. 17, 1914.

"On April 26, 1920, five years and four months after the date of the death of testator, John McCourt, the legatee, waited upon John Cadwalader, the executor, in the latter's office, No. 263 South 4th Street. Mr. Cadwalader said, 'we have been waiting for you for a long time,' and that he was ready to pay over the legacy. John McCourt suggested that Mr. Cadwalader retain the sum; he was moving about from place to place; intimated he would send more money, etc. Mr. Cadwalader demurred unless there were some writings showing the circumstances under which he held the money. Whereupon a declaration of trust was prepared by Mr. Cadwalader, typed by his typist, executed by Mr. McCourt, and witnessed by two people in the office and by a Miss Regli, who brought Mr. McCourt there. The trustee was to hold the fund with its accumulations; in case of death of the settlor, the trustee was to distribute as should afterwards be directed, and the right of revocation was in effect reserved. This declaration of trust is set forth on pages 23-24 of the notes of testimony. . . .

"Between the time of the original audit and this present hearing, Mr. Cadwalader had caused advertisements in form following: 'Information wanted of John McCourt, sometimes known as Jack Court, son of Patrick McCourt, connected with Jockey clubs and race courses; was leaving for Canada in May or June, 1910. Address John Cadwalader, Executor of David McCourt, 263 So. Fourth Street, Philadelphia, Pa.,' in the New York Telegraph, New York Herald and in its Paris edition, in Montreal, in Toronto, and in papers in other places. John McCourt—sometime Jack—was a follower of the races, and, after racing was stopped in New York, went to Cuba, Mexico and abroad. Mr. Cadwalader received, all told, three letters. One may refer to the John McCourt in question; it is somewhat doubtful whether the others do. If, however, the one dated sometime prior to Dec. 10, 1919, refers to this particular John McCourt, he has surely been 'heard of' within five years, and even though the others may refer to some other John McCourt, that fact cannot, in the present condition of the record, be affirmatively determined.

"Mr. Rambo, on behalf of the Regli children, contends that there is a condition precedent or one subsequent, and that, as Mr. McCourt was not heard of within the five-year limit, the alternate gift thereupon became valid. He has presented an excellent brief. It would seem to the auditing judge that the cases on which he most relies are clearly distinguishable in their facts from the will now under consideration.

"In Campbell v. McDonald, 10 Watts, 179, the language of the will was as follows: 'I bequeath to the children of my brother, Hugh Walker, in equal parts, the last six instalments of the place which I and my wife conveyed to John Cook, . . . *provided* my brother, Hugh Walker, of the County of Down, of the parish of Bangor, townland Ballysallach, in Ireland, . . . *appear within six years from my decease*, with sufficient proof, such as the Court of Washington County, Pa., may think sufficient, that they are the within mentioned heirs, *which I do require them to do before they get any part of my estate.*'

"It is very clear from this language that the intention of the testator was, as the court held, to make a gift to these beneficiaries upon a condition precedent, for he expressly said that he required them to comply with the condi-

2 D. & C.

tions before they get any part of his estate. In that case there was no absolute gift, for the condition was incorporated in the gift itself as a proviso.

"In the case at bar, on the other hand, the intention of the testator seems just as clear not to create a condition, either precedent or subsequent. There is an absolute gift to John McCourt.

"However, because of the latter's long absence, he feared that he was dead, and, desiring to prevent a possible intestacy, he inserted the gift over, which he intended should take effect if John McCourt were dead. The language used was that if, at the end of the period specified, McCourt had not been 'heard of,' the gift over was to take effect. Here was no provision requiring any affirmative action on the part of McCourt. He was not required to appear; he was not required to make any claim. It was merely necessary that he should have been heard of, and it is significant that the testator does not even indicate *who* must have heard of him within the five-year limit.

"Fairfax's Appeal, 103 Pa. 166, is even farther from the present case than Campbell *v.* McDonald. There the testator made a bequest 'Unto each of the children of Robert Gay, of Aughedella, County of Tyrone, and Eliza, his wife, formerly Eliza Stewart, *who may apply for the same within twelve months after my decease.*' This was clearly a case of a condition precedent and was so interpreted by all the parties, the question in issue being whether children of deceased legatees might share in the legacy upon making claim within the period limited.

"But, aside from the question whether it was made a condition that John McCourt should have been heard of within five years from the testator's death, how can there be any doubt that this condition was fulfilled? The words are very vague and general in meaning. In the first part of the paragraph of the will under discussion the testator recited that he had not heard *'from'* McCourt for some years, and then he makes the provision, not that the executor must have heard from him, but that he must have heard *of* him. What do these words mean? The testator does not even say that McCourt must be heard of by the executor directly. Thus, if some friend or relative had heard of McCourt within five years, and reported this to the executor, he was surely within his rights in refusing to pay the gift to the alternative claimants unless and until he was fully convinced that McCourt was dead. Under this language, even the vaguest rumor of the existence of John McCourt would be a fulfillment of the so-called condition, and it need not necessarily be a well-founded rumor. The condition was not that McCourt must appear within five years, or that a message must have come from him within five years, or that his whereabouts must be known within five years, but merely that he must be heard *of*. More vague and inclusive words could scarcely have been chosen.

"With this thought in mind, let us consider the testimony. Did any rumors or reports reach the executor within five years regarding John McCourt, calculated to lead the executor to make further inquiries? If so, it was his clear duty to retain the fund until he had satisfied himself either that McCourt was alive or dead.

"Regarding his efforts to find McCourt, Mr. Cadwalader says, referring to a time within five years from the testator's death: 'Then I had some information he might be in Canada and I advertised in Montreal and in Toronto at various times.' (Page 2.)

"He further testifies to letters which he received concerning a McCourt, one in June, 1918, in which a man signing himself 'Follower of Ponies' stated that he had known McCourt ten years previously; that he thought he had

McCourt's Estate.

gone to England in 1910, and that he would make further inquiries. (Page 2.) Can it be said that this was not *'hearing of'* John McCourt? It does not matter that the identity of the writer of the letter was not established; it was certainly a communication regarding McCourt, and as such was bound to be heeded by the executor.

"Mr. Cadwalader also refers to a letter which he received from John J. Dwyer, a New York lawyer, who said: 'I may be able to supply information concerning him (John McCourt).'

"There was also a letter from a British chemical company, dated June 28, 1918 (page 3), conveying information about a John McCourt. It may be that other statements in this letter indicate that the man referred to is not the John McCourt of whom information was being sought; but this is not certain, as Mr. Cadwalader does not, and did not, know fully all of John McCourt's relatives, and it may be that the John McCourt referred to in this letter was he.

"And now we come to the letter from Tonopah, Nevada, received a few days befre the expiration of the five years. The writer of this letter (page 4) states that he knew John McCourt well, gave certain facts concerning his movements, and then stated that he was at one time in Divide City, Nevada, and that the writer would endeavor to locate him.

"On the other hand, Mr. White, whose contention is that the legacy should be paid to John McCourt, rests on Englefried *v.* Woelpart, 1 Yeates, 41, which case would seem to be in point and to sustain such view. In that case there was a devise of one-sixth of the testator's estate, each to three children in Germany and two in Pennsylvania, with the following proviso: 'Provided always that my said three children, Carl, Philip and Barbara, whom I left in Germany, or the children or grandchildren of any or either of them who is now dead, or the guardians of such children or grandchildren, shall, within the space of six years from the day of my decease, transmit to my executors authenticated proofs of their being alive, and that without such proofs no part of the residue of my estate shall be paid or remitted to them, my said children or grandchildren in Germany, and after the expiration of the said term or space of six years no proof shall be admitted, but the said residue shall be equally divided among such of my children and grandchildren as can make such proof, and shall have made it within the aforesaid space of time.'

"Proof was made out within the time limited, but circumstances arising from conditions in Europe prevented the proof reaching Pennsylvania in time. Chief Justice McKean, in delivering the opinion of the court, said: 'Each child was equally the object of the testator's bounty. The clause in the will must have been inserted to quicken the application for the money by such of his children who lived in Germany. It cannot be conceived that, under all possible events, the testator meant to deprive them of their portion of his property if the proofs did not come over in time, when they were prevented from sending them forward by inevitable accident. It is immaterial whether the condition be construed precedent or subsequent. We must regard the evident intention of the testator, and to effectuate this intention we will construe the copulative 'and' in the latter part of the proviso as the disjunctive 'or,' which will fully entitle the plaintiff to recover. The word 'or' in a will has been rejected, and the word 'and' construed 'or' and the word 'or' construed 'and' to comply with the intent of the testator: 2 Stra., 1175; Pollex, 645; 2 Vern., 388; 1 Wils., 140; 3 Atky., 390. So the word 'and' has been construed 'or' in a lease: 1 Leon., 74. And the word 'or' has been construed 'and' in an Act of Parliament: 1 Vent, 62.'

2 D. & C.

McCourt's Estate.

"This case is very much like the one now before the auditing judge, in that in each case the gift over was made in contemplation of the possibility that the first taker or takers might be dead. In the case cited, however, a much more plausible argument could be made that the gift over took effect than in the present case, for in the former there were specific provisions that proofs were to be made within six years. In the present case the direction is that the payment over shall be made only if the absent legatee had not been 'heard of.' Irrespective of the messages which Mr. Cadwalader received, it seems that upon the authority of the case last cited, it was the duty of the executor to pay the money to John McCourt when he appeared, thereby carrying out testator's intention to benefit him if he were living.

"Testator uses the words 'from' and 'of' advisedly. He had not heard *from* John McCourt for many years; it is possible because of this fact he is dead; yet he, testator, makes an absolute gift of $5000 to him, which is not to be taken away if the legatee is heard 'of,' which would appear to mean that if he were alive, he was to be paid the bequest. Forfeitures are to be strictly construed. To award this fund to Clement Regli for his children would be depriving John McCourt for all time of his day in court. He alone can throw light on the complicated situation confronting the auditing judge. On the record as it stands, the auditing judge does not hesitate to award, and he does so award whatever fund was directed (in the prior adjudication), with its accumulations, to John McCourt, and directs payment thereof to the trustee named in the declaration of trust, with leave to make any and all necessary assignments and transfers.

"And now, to wit, May 13, 1922, the account is reconfirmed *nisi.*"

*Bertram P. Rambo* and *Ormond Rambo,* for exceptant.

*Thomas Raeburn White,* contra.

GEST, J., June 23, 1922.—The auditing judge in his readjudication has so satisfactorily discussed and decided the questions raised by these exceptions that we do not consider it necessary to add anything to what he has said.

The exceptions are dismissed and the adjudication confirmed absolutely.